**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAULA GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| UNITED PARCEL SERVICE, CO., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AT LAW**

Now comes the Plaintiff PAULA GONZALEZ, by and through her attorneys, THE LAW OFFICE OF JEFFREY FRIEDMAN, P.C., and complains of the Defendant UNITED PARCEL SERVICE CO., and seeks redress for the sexual harassment Plaintiff suffered in violation of the laws of the United States and in support thereof alleges on information and belief as follows:

1. Jurisdiction of this court is invoked and authorized pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, as amended in the Civil Rights Act of 1991, (referred to herein as "Title VII"), and pursuant to the principles and pendent jurisdiction.

2. Venue is proper in the Northern District of Illinois because the actions complained of occurred at United Parcel Service (hereinafter "UPS"), located Franklin Park, Illinois.

3. Plaintiff Paula Gonzalez ("Gonzalez") has filed a timely "Charge of Sexual Harassment" with the Equal Employment Opportunity Commission, and has received her Right to Sue Letter.

1

4. Plaintiff Gonzalez is an 18-year old female residing in Elmwood Park, Illinois, within this District.

5. GONZALEZ is a protected person under Title VII.

6. GONZALEZ began her employment with UPS in or about June 2015 as a small sort specialist in UPS's Franklin Park, Illinois facility.

7. GONZALEZ'S employment ended on or about March 14, 2017, when she could no longer tolerate the sexual harassment and retaliation, at which time she was constructively discharged.

8. UPS is headquartered in Atlanta, Georgia and is the world's largest package delivery company and one of the leading global providers of specialized transportation and logistics services.

9. UPS is an "employer" in the State of Illinois, within the meaning of Title VII.

10. Tatiana Harris (hereinafter "HARRIS") was a small sort manager at UPS and one of GONZALEZ'S supervisors.

11. At all times relevant thereto, HARRIS was a member of the management team of UPS.

12. At all relevant times hereto, HARRIS was responsible for and had the authority to oversee and manage GONZALEZ'S daily tasks and duties, determine the location at which GONZALEZ was assigned, and otherwise affect GONZALEZ'S terms and conditions of employment with UPS.

13. Commencing in or about November 2016, GONZALEZ began to experience numerous acts of sexual harassment by UPS, by and through HARRIS. These acts of sexual

2

harassment were indicia of the persistent pattern of sexual harassment that GONZALEZ was subjected to at UPS.

14. Commencing on or about November 2016, GONZALEZ regularly experienced sexual harassment by being subjected to the following unwelcome and inappropriate actions, among others:

a. Repeatedly being the subject of crude and sexual comments, including comments about her body parts, her tongue piercing and "knowing what that's for";

b. Being propositioned for sexual acts, including being asked about participating in three-somes;

c. Being inappropriately touched and brushed up against;

d. Being followed into the bathroom.

15. The extremely offensive sexual and vulgar conduct and harassment directed toward GONZALEZ by UPS, by and through HARRIS, had the purpose of, and actually did cause, severe emotional distress to GONZALEZ, such that she complained regularly and demanded that said behavior immediately stop.

16. UPS had direct and indirect knowledge of the sexually harassing conduct affecting GONZALEZ described herein.

17. UPS was aware that former and current employees witnessed and were aware of the sexual harassment affecting GONZALEZ.

18. UPS was aware that HARRIS sexually harassed other former and current UPS employees.

19. UPS knew that the incidents of sexually harassing conduct were unwelcome to GONZALEZ.

20. UPS knew or should have known that these incidents were so pervasive and extreme that they affected and altered GONZALEZ'S conditions of employment and created an offensive, intimidating, hostile and abusive work environment.

21. Although the sexual harassment engaged in by UPS was well known, in or about November 2016 and continuing through the end of her employment with UPS, GONZALEZ raised multiple complaints to the General Manager (Kurt-last name unknown, referred to as the "GM"), about the ongoing sexual harassment she was experiencing.

22. GONZALEZ'S complaints to UPS were disregarded and GONZALEZ was ridiculed, belittled, intimidated, and humiliated by UPS, by and through the GM, who stated to GONZALEZ that UPS expected that she would quit, and with words to the effect "Don't cry, you must be having menstrual cramps;" and "you are not stable now."

23. GONZALEZ'S complaints to UPS were further disregarded when GONZALEZ was told, on or about January 12, 2017, that there would be no meeting with anyone at UPS about her complaints, and she was instructed to leave for the day.

24. GONZALEZ'S complaints about the sexual harassment she was experiencing were further disregarded when GONZALEZ was told she would be required to remain in the Franklin Park, Illinois facility, and would not be allowed to relocate, despite the fact that GONZALEZ was willing to relocate in order to get away from HARRIS, who continued to sexually harass her, to threaten her, to intimidate her, and to deny her simple accommodations at work that were routinely provided to other employees.

25. GONZALEZ'S complaints about the sexual harassment she was experiencing resulted in GONZALEZ not being provided with work assignments and shifts.

4

26. GONZALEZ'S complaints to UPS were further disregarded when GONZALEZ was threatened and her job was threatened, and these threats were reiterated when GONZALEZ informed UPS that she would be retaining an attorney.

27. Notwithstanding direct and indirect knowledge of the fact that GONZALEZ was the victim of sexual harassment at UPS, UPS failed to address, remedy, and/or prevent the sexual harassment that UPS had experienced and continued to experience.

28. On or about March 14, 2017, GONZALEZ resigned from UPS, on the grounds that GONZALEZ could no longer tolerate the hostile work environment at UPS.

**COUNT I**
*Violation of Title VII of the Civil Rights Act of 1964, as amended – Sexual Harassment*

29. GONZALEZ repeats and realleges paragraphs 1-28 as if fully stated herein.

30. On numerous occasions, GONZALEZ experienced a hostile working environment and unwelcome or unwanted sexual advances, including but not limited to lewd and offensive sexually vulgar comments, being propositioned, touched, brushed up against, as alleged herein.

31. The extremely offensive sexual conduct and harassment directed toward GONZALEZ was unwelcome, and had the purpose of, and actually did cause, severe emotional distress to GONZALEZ, such that she complained regularly and demanded that said behavior immediately stop.

32. The extremely offensive unwelcome sexual harassment and abusive environment by management of UPS was sufficiently severe and pervasive such that it created intolerable working conditions for GONZALEZ.

33. As a direct result of UPS's conduct, GONZALEZ suffered damages, including but not limited to severe emotional distress, pain, suffering, humiliation, both past and continuing, and lost wages and economic opportunities.

**COUNT II**
*Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2003e-3, and Section 6-101(A) of the Illinois Human Rights Act*

34. GONZALEZ repeats and realleges paragraphs 1-28 as if fully stated herein.

35. At all times relevant hereto, GONZALEZ engaged in a protected activity under Title VII and under the Illinois Human Rights Act, when she complained about the sexual harassment she was experiencing at UPS.

36. In retaliation for GONZALEZ's complaints and rejection of sexual harassment, UPS, by and through its employees and agents retaliated against GONZALEZ by intentionally and willfully altering and reducing her work schedule, refusing to transfer her, impairing her ability to perform her job duties, threatening her both physically and with termination of her employment, and otherwise interfering with the terms and conditions of her employment, such that she was forced to resign in order to separate herself from the intolerable and unsafe working environment.

37. As a direct result of UPS's conduct, GONZALEZ suffered damages, including but not limited to severe emotional distress, pain, suffering, humiliation, both past and continuing, and lost wages and economic opportunities.

## COUNT III
### *Constructive Discharge*

37.     GONZALEZ repeats and realleges paragraphs 1-28 as if fully stated herein.

38.     UPS subjected GONZALEZ to sexual harassment and retaliation as set forth in paragraphs 1 through 36 herein.

39.     GONZALEZ was forced to resign because the sexual harassment and abusive environment sanctioned and accepted by UPS was sufficiently severe and pervasive such that it created an intolerable and hostile working environment for GONZALEZ.

40.     UPS, by and through its words and actions, intended to make GONZALEZ'S working conditions intolerable such that she would be forced to resign.

41.     As a direct result of UPS'S conduct, GONZALEZ suffered damages, including but not limited to severe emotional distress, pain, suffering, humiliation, both past and continuing, and lost wages and economic opportunities.


WHEREFORE the Plaintiff PAULA GONZALEZ respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant UPS and:

a.      Award GONZALEZ actual economic damages suffered, including lost wages, back pay, lost benefits, front pay, and other economic damages according to proof;

b.      Award GONZALEZ compensatory emotional damages for the distress, pain and anguish she has suffered and is expected to suffer in the future;

c.      Award GONZALEZ punitive damages;

d.      Award GONZALEZ reasonable attorneys' fees and costs;

e.      Award GONZALEZ prejudgment interest;

f.      Award GONZALEZ such other and further relief, as this Court deems equitable and just.

Respectfully submitted,

s/ Jeffrey Friedman
One of Plaintiff's attorneys


LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorney for Plaintiff
120 S. State Street, Suite 400
Chicago, Illinois  60603
(312) 357-1431